Filed 1/21/16  U.S. Bank National Assoc. v. Matsuba CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> YUN MATSUBA, <br><br> Defendant and Appellant. | B250789 <br><br> (Los Angeles County <br> Super. Ct. No. PC049070) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Randy Rhodes, Judge.  Affirmed.

The Tym Firm and Ronald D. Tym for Defendant and Appellant.

Fidelity National Law Group, Teresa Y. Hillery and Paul Meshek for Plaintiff and Respondent.

_____

Defendant Yun Matsuba (Matsuba) appeals from a judgment entered after a court trial in which the trial court found in favor of plaintiff U.S. Bank National Association (U.S. Bank). U.S. Bank's predecessor (Washington Mutual Bank) had lent money to Matsuba secured by a deed of trust against real property that was recorded on April 6, 2007, in favor of Washington Mutual. Washington Mutual lent the money to Matsuba on the assumption that Matsuba had good title to the property. She did not. A reconveyance to Matsuba of the property, deed of trust, and grant deed in the name of a company owned by Matsuba's family members had not been recorded due to what the parties stipulated at trial was a clerical error.

After U.S. Bank filed a complaint as the real party in interest and the parties stipulated to certain facts, the trial court deemed the reconveyance of the property and related documents recorded as of April 6, 2007, and allowed U.S. Bank to foreclose its lien against the real property. Matsuba contends that the trial court erred because she did not have title to the real property at the time she executed and delivered the deed of trust in favor of U.S. Bank's predecessor lender. Accordingly, U.S. Bank did not have a valid lien to support foreclosure by it against the real property. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The parties' stipulated facts at trial

Because the parties stipulated to the vast majority of the facts in the operative complaint, we do not summarize U.S. Bank's allegations therein in our opinion. We summarize those stipulated facts below, which facts were read into the record at the beginning of trial (the stipulation).

In July 2004, Matsuba acquired, by grant deed, title to real property located in Chatsworth (real property). On August 30, 2004, Matsuba signed a deed of trust in the amount of $424,000 (August 2004 deed of trust), secured by the real property, that was recorded on September 14, 2004. On May 19, 2005, Matsuba signed an equity line of credit deed of trust, with a credit limit of $180,000, secured by the real property, that was recorded on June 23, 2005. On January 7, 2006, Matsuba signed a modification

2

agreement increasing the credit limit on the equity line of credit deed of trust to $240,000, secured by the real property, that was recorded on February 2, 2006.

Matsuba "signed a deed of trust in the amount of $217,000" (Creative Group deed of trust), encumbering the real property for the benefit of Creative Group, that was recorded on February 16, 2006. On October 9, 2006, Matsuba executed a grant deed conveying title to the real property to Creative Group, that was recorded on November 27, 2006. Creative Group is owned by Ramon Garcia and Jane Garcia, Matsuba's son-in-law and daughter, respectively.

In 2007, Matsuba applied for a loan from Washington Mutual Bank (subject loan). A condition of the closing was that Creative Group execute (1) a substitution of trustee and deed of full reconveyance of the Creative Group deed of trust, and (2) a grant deed that conveyed title to the real property to Matsuba. It was the intent of Matsuba and Washington Mutual Bank that the substitution of trustee and deed of full reconveyance of the Creative Group deed of trust, and grant deed be recorded. The substitution of trustee and deed of full reconveyance of the Creative Group deed of trust, and the grant deed from Creative Group to Matsuba were executed by Creative Group and delivered into escrow and transmitted by escrow to the title company for recordation.[1] Due to a clerical or some other error, the executed substitution of trustee and deed of full reconveyance of the Creative Group deed of trust, and the grant deed from Creative Group to Matsuba were not recorded.

With respect to the subject loan, Matsuba executed a promissory note (subject promissory note) in the amount of $648,000 and deed of trust (subject deed of trust) in favor of Washington Mutual Bank as the lender, securing the subject promissory note with the real property. The subject promissory note is in default. It was the intent of Matsuba and Washington Mutual Bank that the subject deed of trust would be a first priority lien secured by the real property. The proceeds of the subject loan were used to

---

[1] Matsuba contends that the original substitution of trustee, deed of full reconveyance, and grant deed "disappear[ed]." Copies of these documents, however, are contained in the record.

pay the obligations of Matsuba secured by the real property. Any debts secured by the real property, paid from the proceeds of the subject loan, were debts for which U.S. Bank was not liable.

**Procedural Background**

On September 1, 2010, JP Morgan Chase Bank, N.A. (Chase), which acquired certain assets and liabilities of Washington Mutual Bank filed a complaint for declaratory relief; quiet title; imposition of and foreclosure of equitable lien; and judicial foreclosure against Matsuba, Creative Group, and others. U.S. Bank, which asserts in its brief that it substituted into the case as the real party in interest, filed a first amended complaint on March 21, 2012, and the operative second amended complaint (SAC) on September 24, 2012, for declaratory relief, quiet title, imposition of a foreclosure of equitable lien, and judicial foreclosure.

U.S. Bank prayed for a judicial declaration that the subject deed of trust is valid and that a copy of the substitution of trustee and deed of full reconveyance and the grant deed transferring title to the real property from Creative Group to Matsuba may be recorded and deemed recorded as of the date of their execution;[2] quiet title in favor of U.S. Bank as of April 6, 2007, the date the subject deed of trust was recorded;[3] and a determination that U.S. Bank has an equitable lien against the real property and permitting foreclosure of the equitable lien against the real property. Matsuba filed an answer to the SAC in December 2012. Creative Group did not file an answer, and its default was entered on January 18, 2013.

**The court trial**

Trial commenced on March 19, 2013. After the stipulated facts were read into the record, the trial court inquired as to what was left to decide. Matsuba's counsel

---

[2] The record contains a copy of the substitution of trustee and deed of full reconveyance showing that it was executed on December 22, 2006. The copy of the grant deed contained in the record appears to show a January 9, 2007 execution date.

[3] The record does not contain a copy of the deed of trust recorded on April 6, 2007, but it is not disputed on appeal that the deed of trust was recorded.

4

responded that Matsuba was "asking for equity" because "through no fault of her own," she did not have title to the real property. She helped her daughter and son-in-law form Creative Group to assist her in operating the senior assisted living center. Matsuba executed a deed of trust with assignment of rents for the benefit of Creative Group not to secure a loan, but for "labor and lot of works" in the amount of approximately $200,000 that her daughter and son-in-law put into the real property.

Matsuba further stated that later she deeded the real property to her daughter and son-in-law because she did not want problems with her son-in-law. Subsequently, Matsuba "took it back" because Creative Group was having a problem making payments on the loan. She testified that Creative Group "give back to me to refinance it" and the "title has to be coming back to me to order to [*sic*] I can refinance it." She knew that when she executed the subject promissory note, title was supposed to be in her name. She asserted that she had to "put in" $16,000 and later an additional $70,000 to $80,000 to consolidate the loans into one loan of $648,000 from Washington Mutual Bank. She conceded that she had received the loan amount of $648,000, but denied that she had "pull[ed] money out" of those loan proceeds.

Matsuba believed she had title to the real property until 2008, when she was asked by Chicago Title company to "'sign the grant deed and backdate it.'" Upon further investigation, she discovered that title was still in the name of Creative Group; she stopped making payments on the subject promissory note in October 2009. She did not ask her daughter and son-in-law to sign the grant deed and put title in her name because "I wasn't talking to them. And I didn't know you can do it. Because I know that much. I'm realtor, so I know that much. So I didn't know that you can do it." She stopped making payments because "[a]t that point, what's the point? My credit they ruined. House prices going down. It's not even mine. I can't even sell it. I can't even modify it. I can't do anything. It's a whole power is that Chase Bank and title [*sic*]." She testified that months later, she took out a second loan from Washington Mutual Bank, which she paid off "last December."

5

On cross-examination, Matsuba admitted that she was obligated to make payments on the subject loan and that when she entered into the subject promissory note, title to the real property was supposed to be in her name. She testified that she "caused" Creative Group to execute the grant deed so title would be in her name. She denied using the "title problem" to try to get Washington Mutual to modify the terms of the loan. She knew that the subject deed of trust would be in the first position on the real property.

At one point, Matsuba testified that she was not sure whether Creative Group was owned by her daughter, or her son-in-law, or both. Then she stated she believed her son-in-law owned Creative Group. Immediately afterward, she admitted that she helped her daughter and son-in-law form Creative Group.

She also claimed not to remember whether she had conveyed other real properties that she had owned to limited liability corporations. She then admitted that she had conveyed property she owned to a limited liability corporation called Owner Management, LLC. She stated she had worked for Owner Management, LLC in 2008 as a realtor. She explained that she had been in the real estate business for 12 years. Although she testified her daughter did not work for Owner Management, LLC, Matsuba was impeached by her deposition testimony, in which she stated her daughter worked for Owner Management, LLC, "'doing property managing.'"

When asked why she did not ask her daughter to execute another grant deed to put title back in her name, Matsuba responded: "I didn't know that's going to be [*sic*] make it right. And on top of that, I—I didn't know that that's going to be too much problem put it back in official title because I give them the correct paperwork."

She reiterated that she did not convey the real property to Creative Group to protect assets. She further denied signing a letter dated January 11, 2017, which stated that the real property was vested in an LLC for asset protection reasons. The court admitted the January 11, 2007 letter into evidence.

**The statement of decision**

On May 14, 2013, the trial court filed a statement of decision. After summarizing the stipulation, the court described Matsuba's claim as "center[ing] on the notion that

6

equity requires that she be reli[e]ved of her obligations under the $648,000.00 note with Mutual because she did not hold title when Mutual lent her the money." The court described U.S. Bank's position, to wit, that it would "be in-equitable . . . to excuse Matsuda from her obligations under the [subject promissory] note" because Matsuba had unclean hands in that she "knowingly and intentionally refused to execute those documents necessary to correct the 'clerical error' and that, with her knowledge of real estate procedures and practices, is simply taking advantage of a mistake."

The trial court found that Matsuba lacked credibility, concluding that even though Matsuba had experience in the real estate area, she rarely answered a question directly. She did not deny that she lived on the property since 2004 and had made no payments for the preceding four years. Her versions of what happened during each loan process, why she believed she was not responsible for the loan, and why she stopped making payments "are highly suspect." The court observed that although English might be Matsuba's second language, there was no evidence that she failed to understand her loan obligations.

The trial court stated that Matsuba failed to present legal authority, and found that it was "equally clear" that Matsuba, Creative Group, and Washington Mutual Bank intended to record the grant deed conveying title from Creative Group to Matsuba "for the purpose of securing the loan." The court summarized its findings: "There are simply no facts presented which could, balancing the equities, more likely than not, lead to a different result."

Accordingly, the trial court granted judgment in favor of U.S. Bank against Matsuba and the other defendants, "with title to the subject property quieted in favor of Bank as of April 6, 2007, the date the subject deed of trust was recorded; and the Deed of Trust dated [M]arch 23, 2007, and recorded April 6, 2007." The court also awarded U.S. Bank attorney fees and costs per motion and a bill of costs.

**The judgment**

Pursuant to the trial court's order, U.S. Bank prepared a proposed judgment, to which Matsuba objected. On July 25, 2013, the trial court filed a judgment providing in pertinent part: (1) A copy of the substitution of trustee and deed of full reconveyance and

7

a copy of the grant deed identifying Creative Group as the grantor and Matsuba as the grantee are hereby deemed recorded as of April 6, 2007; (2) the subject deed of trust dated March 23, 2007, and recorded on April 6, 2007, is a "valid, existing" deed of trust against the real property, "securing the obligations . . . that U.S. Bank can enforce by exercising its rights under the Subject Deed of Trust"; and (3) title to the real property is quieted in favor of U.S. Bank as of April 6, 2007, the date of recordation. Regarding foreclosure, the trial court included in its judgment the relief U.S. Bank sought in the SAC described *ante*, and awarded attorney fees and costs to U.S. Bank.

On August 14, 2013, Matsuba filed her notice of appeal from the judgment.

## DISCUSSION

### Standard of review

We review the trial court's express and implied findings of fact in its statement of decision for substantial evidence. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.) "Substantial evidence is evidence of ponderable legal significance, reasonable in nature, credible, and of solid value. [Citation.]" (*Ibid.*) In reviewing the sufficiency of evidence, we must also view all factual determinations most favorably to the prevailing party and in support of the judgment. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925.) "'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing*.' (6 Witkin, Cal. Procedure [(2d ed. 1971)] § 249, at p. 4241.) All conflicts, therefore, must be resolved in favor of the respondent. [Citation.]" (*Nestle*, at pp. 925–926.)

### Substantial evidence supports the trial court's judgment

A deed transfers title to the grantee when it has been legally delivered by the grantor. (Civ. Code, § 1054; *Luna v. Brownell* (2010) 185 Cal.App.4th 668, 673.) "A grant duly executed is presumed to have been delivered at its date." (§ 1055.) A deed is considered constructively delivered when the parties agree, at the time of execution, that the deed is understood to be delivered and under the circumstances, the grantee is entitled to immediate delivery, or when it is delivered to a third party for the benefit of the grantee and the grantee's consent is shown or may be presumed. (§ 1059.)

8

Significantly, for purposes of this appeal physical delivery is not a prerequisite to vesting of title; rather, delivery is a question of intent. (*Luna*, at p. 673.) Additionally, acceptance by the grantee is required to make an effective delivery and is a question of fact. (*Ibid.*) The trier of fact reviews all of the surrounding circumstances of the transaction to determine intent. (*Ibid.*) We review the trial court's determination of delivery or nondelivery for substantial evidence. (*Ibid.*)

Matsuba argues that although Creative Group deposited a grant deed in favor of Matsuba into escrow, there was no evidence that Creative Group authorized the grant deed's delivery to Matsuba from escrow, and that the fact that the grant deed "was never recorded and disappeared" would tend to demonstrate that no such delivery occurred or was intended by Creative Group.

Here, the stipulation and the evidence presented at trial amply support the trial court's conclusion that Washington Mutual, Creative Group, and Matsuba intended that the grant deed and substitution of trustee and reconveyance of deed of trust executed by Creative Group be recorded.

The stipulation recited that Matsuba acquired the real property in 2004. The stipulation described a number of loans secured by the real property and subsequent reconveyance of ownership to Creative Group, which was owned by Matsuba's daughter and son-in-law. The stipulation also stated that as a condition of the subject loan, Creative Group was required to execute the substitution of trustee and deed of full reconveyance and the grant deed conveying ownership of the real property back to Matsuba.

According to the parties' very own stipulation, "It was the intent of Matsuba and Washington Mutual that the substitution of trustee and deed of full reconveyance of the Creative Group deed of trust and grant deed be recorded." Furthermore, Creative Group executed these documents, and the documents were "delivered into escrow and transmitted by escrow to the title company *for recordation*." (Italics added.) The parties further stipulated that Matsuba executed the subject note and deed to secure the promissory note with the property. The parties stipulated that the reason that recordation

9

never happened was due to clerical or some other error. They further stipulated that Matsuba had the benefit of the loan proceeds, which she used to pay her debt obligations.

It appears disingenuous for Matsuba now to seize upon the latter clerical error to avoid the very lien contemplated by her stipulations. In short, the stipulation itself constitutes substantial evidence supporting the trial court's findings and the judgment.[4]

Matsuba also urges that the trial court had no grounds to question Matsuba's credibility at trial because she admitted she was obligated to repay the loan, and "now" that the court had ordered that the real property be placed in Matsuba's name, she can cure the loan default by selling the real property or seeking a loan modification. Matsuba's argument misses the trial court's point in its negative assessment of her credibility. As described *ante*, Matsuba contradicted herself several times during the trial, and the trial court criticized her for rarely answering a question directly. The trial court could properly have taken the quality of her testimony into account in determining whether the parties intended to record the documents at issue here. Matsuba's other arguments are also unavailing.[5]

---

[4] Matsuba's testimony did not aid her cause. She testified that she had helped her daughter and son-in-law form Creative Group and purchased the real property to facilitate operating a senior assisted living center with them. Thus, the trial court could have concluded that Matsuba and Creative Group intended that Creative Group convey title to the real property to Matsuba and record all necessary documentation in order to facilitate their common goals. Matsuba's acceptance of the grant deed and the loan proceeds, as well as her belief that she held title to the real property, also support the court's finding that Matsuba, Creative Group, and Washington Mutual intended the documents to be recorded and legally delivered.

[5] Matsuba contends that because she still owed Creative Group $217,000, there was no reason to believe Creative Group intended to release the subject grant deed from escrow. In light of the parties' stipulated facts, this argument is a non sequitur. Given our conclusion that substantial evidence supported the parties' intent to record the documents at issue here, we do not address Matsuba's contention that the equitable doctrine of "'after acquired title'" does not apply.

10

**The judgment does not deprive Matsuba of statutory notice or her right of redemption upon foreclosure, as the parties now acknowledge**

Initially, Matsuba contended that the trial court erred in rendering judgment permitting U.S. Bank to wait until after the foreclosure sale of the real property to waive the deficiency against her. Matsuba has since retreated from this argument after U.S. Bank acknowledged in its briefing that the judgment does not relieve U.S. Bank "of any statutory notice requirement for waiver of a deficiency judgment." We agree that on its face the judgment preserves Matsuba's statutory rights upon a foreclosure sale.[6] For example, the judgment states that the subject deed of trust dated March 23, 2007, and recorded on April 6, 2007, "shall be foreclosed, and judgment be entered for the sale of the [real] property, *according to law by a levying officer to be appointed by the Court.*" (Italics added.) Additionally, the judgment recites that Matsuba shall be barred from a right of redemption to the real property "*when the time for redemption* has elapsed." (Italics added.)

In sum, we conclude that none of Matsuba's arguments has merit and affirm.

---

[6] Code of Civil Procedure section 701.545 provides in pertinent part: "Notice of sale of an interest in real property . . . may not be given pursuant to Section 701.540 until the expiration of 120 days after the date notice of levy on the interest in real property was served on the judgment debtor."

11

**DISPOSITION**

The judgment is affirmed.  U.S. Bank is awarded its costs on appeal under California Rules of Court, rule 8.278.

NOT TO BE PUBLISHED.


LUI, J.

We concur:


CHANEY, Acting P. J.


JOHNSON, J.